**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Loop Corp., Leon Greenblatt, Nola, LLC, Repurchase Corp., Leslie Jabine, Teletech Systems, Inc., Chiplease, Inc., and Banco Panamericano,

Appellants,

v.

United States Trustee and Committee of Unsecured Creditors,

Appellees.

**MEMORANDUM OPINION AND ORDER**
Civil No. 02-793 ADM

---

Michael F. McGrath, Esq., Ravich Meyer Kirkman McGrath & Nauman, P.C., Minneapolis, MN, and Robert M. Fishman, Esq., and Brian L. Shaw, Esq., Shaw Gussis Fishman Glantz & Wolfson, LLC, Chicago, IL, on behalf of Appellants.

Michael R. Fadlovich, U.S. Trustee's Office, Minneapolis, MN, on behalf of Appellant U.S. Trustee.

---

## I. INTRODUCTION

This matter is before the undersigned United States District Judge on Appeal [Docket No. 1] from the March 13, 2002 Order of Bankruptcy Judge Robert J. Kressel [Docket No.1, Doc. No. 2] . Appellants challenge the court's conversion of the consolidated bankruptcy cases [Bky 01-43354] of Debtors Health Risk Management, Inc., HRM Claim Management, Inc., Institute for Healthcare Quality, Inc., and Health Benefit Reinsurance, Inc. f/k/a Health Benefit Reinsurance of Michigan, Inc. (collectively, "Debtors"), from Chapter 11 to Chapter 7. This matter was taken under advisement on November 15, 2002, upon the filing of Appellants' Reply Brief. For the reasons stated below, the Appeal is denied and the March 13, 2002 Order is affirmed.

FILED 2-5-03
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD 2-5-03
DEPUTY CLERK

## II. BACKGROUND

Debtor Health Risk Management ("HRM") is a parent corporation with several subsidiaries. On May 18, 2001, Ernst & Young resigned as HRM's independent auditors after issuing a restatement of HRM's payables to reflect a $6 million increase. After revelation of Ernst & Young's mistake, Loop Corporation ("Loop"), owner of roughly 50% of HRM's stock, notified HRM that it would not fund the remaining $3.1 million of financing under an agreement in which Loop had committed to provide $6.1 million to HRM. Debtors' Disclosure Statement of Dec. 5, 2001, at 7 ("Disclosure Statement") [Docket No. 1, Doc. No. 9]. As a result of liquidity problems, on August 7, 2001, HRM and three of its subsidiaries filed four Chapter 11 cases [Bky 01-43354; Bky 01-43355; Bky 01-43356; Bky 01-43357], now consolidated and jointly administered under Bky 01-43354.

By December 5, 2001, HRM had liquidated most of its assets and filed its Disclosure Statement and Plan of Liquidation. Disclosure Statement at 1. HRM had no ongoing business concerns. Its assets consisted of: 1) approximately $3.25 million in cash; 2) potential causes of actions against Ernst & Young, Loop, and directors and accountants of HRM; and 3) net operating losses ("NOLs"). The Official Committee of Unsecured Creditors ("Committee"), HRM, and Loop then entered into roughly two months of negotiations on how to proceed. From September, 2001, through January, 2002, expenses and fees of attorneys, accountants, and consultants totaled over $1.3 million, and no final agreement was reached. <u>See</u> Bky 01-43354 Docket Nos. 71, 100, 103, 111, 160, 180, 206, 207, 209, 213, 224, 225, 236, 266, and 267 (applications for fees and expenses).

By motion heard on February 6, 2002, the U.S. Trustee ("UST") asked for the Chapter 11

case to be dismissed or converted to Chapter 7 [Docket No. 1, Doc. Nos. 11, 12; Bky 01-43354 Docket No. 238]. The UST argued that the government trustee appointed to oversee the Chapter 7 action would have lower management expenses and expedite the process of securing payment for the creditors. Tr. of 2/6/02, at 6-11. Referencing the fruitless negotiations of the prior two months and the attendant expenses, it asserted that continued Chapter 11 proceedings would bring a certainty of more legal and consulting costs in exchange for the mere possibility of bringing in revenue for the NOLs. Id. at 7. In the UST's opinion, the plan developed by HRM seemed cumbersome and unlikely to work. Id. at 7, 9-11. The UST argued that the creditors would be better off avoiding certain expenses for the slim chance of greater return, and, based on his review of the December 5, 2001 Debtors' Plan of Liquidation ("Plan"), Judge Kressel agreed. However, all the parties involved, Debtors, Appellants, and the Committee, wanted to pursue the Plan and claimed that they were merely days away from an agreement. Judge Kressel expressed his inclination to convert, but continued the case until March 13, 2002, to give the parties a chance to finalize a reorganization plan. He warned the parties that if all had not agreed to a final plan by March 13, he would convert the case. See Tr. of 2/6/02, at 38, ll. 14-25.

On Monday, March 4, 2002, the Committee changed its position, filing a motion requesting that the case be converted to Chapter 7 immediately, or alternatively that HRM's assets be frozen pending the March 13 hearing. See Motion for Expedited Hearing and Immediate Conversion ¶¶ 17, 18 [Docket No. 1, Doc. No. 22]. As a basis for its motion and exigency, the Committee alleged sudden management changes, stating that on or about February 28, 2002, all of the members of HRM's board of directors resigned, with the exception of Andrew Jahelka ("Jahelka"). Id. ¶ 12. Jahelka thus simultaneously held positions as the sole

member of HRM's board and as president of Loop, in addition to being a target of litigation in the Chapter 11 proceedings. Id. ¶ 14; but see Debtors' Response to Committees' Motion ¶ 3 [Docket No. 1, Doc. No. 24] (stating that the management shift was a minor change because there were only two directors prior to the resignation). Further, the Committee stated that Jahelka, as the sole director of HRM's board, then appointed Leon Greenblatt ("Greenblatt"), the majority owner of Loop and holder of ownership interests in other Appellants, as chief restructuring officer of HRM. Motion for Expedited Hearing and Immediate Conversion ¶¶ 14, 16. Stating that such changes placed Debtor HRM entirely under the control of just the Appellant creditors, the Committee argued that the requested relief was necessary to prevent insider control and usurpation of Debtors' assets. Id. ¶¶ 14, 16, 17. Judge Kressel heard the Committee's arguments in favor of conversion on March 7, but continued the motion without decision until the previously scheduled hearing on March 13. Tr. of 3/7/02, at 13, l. 2.

At the March 13 hearing, Loop and HRM presented a plan on which the two had agreed. The Committee and the UST opposed this plan and requested that the case be converted to Chapter 7. Referencing his earlier findings and statement that unless all the parties had agreed to a final plan he would convert the case, Judge Kressel converted the case to Chapter 7. Appellants now contest this ruling.

Appellants raise six issues on appeal. All center around the interpretation of 11 U.S.C. § 1112(b) and the sufficiency of the evidence. Initially, Appellants claim Judge Kressel applied improper legal standards under § 1112(b)(1). Second, they argue he failed to hold Appellees, as movants, to their burden of proof. Relatedly, it is asserted that Appellees did not introduce sufficient evidence to support the conversion. Next, Appellants contend the bankruptcy court

erred in failing to make adequate findings of fact. Fifth, they allege the bankruptcy court did not give proper weight to certain evidence, and lastly, that they were deprived of the opportunity to present their revised plan, resulting in a premature ruling.

## III. DISCUSSION

### A. Standard of Review

The District Court reviews the Bankruptcy Court's factual findings for clear error and conclusions of law de novo. In re Svoboda, 264 B.R. 190, 194 (8th Cir. 2001). A finding is clearly erroneous if the reviewing court "is left with a definite and firm conviction that a mistake has been committed." Id. The bankruptcy court has broad discretion in evaluating whether or not there is cause to convert a Chapter 11 case and the court's factual basis for this determination will be reversed only for clear error. In re Hatcher, 218 B.R. 441, 448, 449 (8th Cir. 1998); In re Lumber Exch. Build. Lmt. P'ship, 968 F.2d 647, 648 (8th Cir. 1992).

### B. 11 U.S.C. § 1112(b)

11 U.S.C § 1112(b) provides that the court may convert a Chapter 11 case to a case under Chapter 7 if such action is in the best interests of the creditors and the estate, and cause for conversion exists. 11 U.S.C § 1112(b); see also In re Fort Knox Mini Warehouse, Inc., 2002 WL 1842452, at *2 (Bankr. N.D. Iowa July 31, 2002). This section enumerates nine alternative factors that constitute cause. 11 U.S.C. § 1112(b). The list is not exhaustive and courts may find cause for other equitable reasons. See In re Economy Cab & Tool Co., 44 B.R. 721, 724 n.1 (Bankr. D. Minn. 1984). Among other circumstances, the statute states that cause includes "(1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation; (2) inability to effectuate a plan; [or] (3) unreasonable delay by the debtor that is

prejudicial to creditors . . . ." 11 U.S.C. § 1112(b). The movant bears the burden of proof and must demonstrate the presence of one of the statutory grounds or other cause. Economy Cab, 44 B.R. at 724.

Though some dispute exists as to the number of factors under which the court found cause to convert, the record shows Judge Kressel decided that cause had been established under the first statutory circumstance, continuing loss to or diminution of the estate coupled with no reasonable likelihood of rehabilitation. See 11 U.S.C. § 1112(b)(1); Tr. of 2/6/02, at 36-37, ll. 18-15. Because one ground for cause is sufficient standing alone, the Court need not discuss the parties arguments as to additional factors listed in § 1112(b).

The first ground requires a showing of both a continuing loss to the estate and the absence of a reasonable likelihood of rehabilitation. 11 U.S.C. § 1112(b)(1). A finding that the debtor suffered continuing losses or maintained a negative cash flow "after the entry of the order for relief" suffices to demonstrate continuing loss to the estate. Fort Knox, 2002 WL 1842452, at *2. Absence of likelihood of rehabilitation is satisfied by a showing that the debtor is unable to get the business up and running again on a firm base. In re Minnesota Alpha Found., 122 B.R. 89, 93 (Bankr. D. Minn. 1990); Economy Cab, 44 B.R. at 725 n.2. Under § 1112(b), "'rehabilitation' contemplates the successful maintenance or re-establishment of the debtor's business operations . . . ." Minnesota Alpha, 122 B.R. at 93.

**a. Continuing Loss**

Citing case law from other jurisdictions, Appellants complain that the court incorrectly considered the continuing administrative expenses to constitute diminution of the estate. In doing so, they assert, the court created a per se rule that there will be cause for conversion in

every liquidating Chapter 11 case. However, within the Eighth Circuit, continuing loss can be demonstrated by a bare showing that the debtor suffered continuing losses or maintained a negative cash flow position after the entry of the order for relief. Fort Knox, 2002 WL 1842452, at *2; In re Schriock Const., 167 B.R. 569, 575 (Bankr. N.D. 1994). The debtors do not dispute that losses were continuing, but base their argument on the court's interpretation of the law. The transcript of the proceeding reveals that Judge Kressel properly applied the standard used in this Circuit and Appellants' attempt to insert their preferred version of the law must be rejected. See Tr. of 2/6/02, at 12-13, ll. 20-13, 36-37, ll. 18-15; In re Schriock, 167 B.R. at 575. Although not a required finding under the law of the Eighth Circuit, Judge Kressel further noted that costs would likely be less under Chapter 7 than Chapter 11, due to the complexity of the Plan and the mounting legal and administrative costs. See Tr. of 2/6/02, at 33-34, ll. 20-7, 34-35, ll. 22-14, 36, ll. 14-17. In considering these litigious and discordant circumstances of the dispute the court properly made "a full evaluation of the present condition of the estate." Economy Cab, 44 B.R. at 724.

**b. Likelihood of Rehabilitation**

Similarly, Judge Kressel's conclusion that rehabilitation was not reasonably likely was not clearly erroneous. See Minnesota Alpha, 122 B.R. at 93; Economy Cab, 44 B.R. at 725 n.2. The Debtor's Disclosure Statement reveals that HRM had no ongoing business concerns and Appellants do not contest that they had no intent to re-establish the business. See Disclosure Statement at 1. Instead, they again rely on the statutory interpretations of other jurisdictions, claiming that rehabilitation requires only the ability to confirm a plan of reorganization, not the ability to "emerge as an economically viable enterprise." In re Schriock, at 576.

The bankruptcy court's findings on this point, based on the record before it, properly applied the precedent of this Circuit and evidenced consideration of multiple factors. See Minnesota Alpha, 122 B.R. at 93 (reciting that "[r]ehabilitation means something more than reorganization," and noting that the prospect of long and complicated litigation militated against likelihood of rehabilitation) (internal quotation and alterations omitted); Tr. 2/6/02, at 12-13, ll. 20-13, 29, ll. 14-24, 36-37, ll. 25-6.

Even if the court's application of these legal standards to the facts of this case implied a per se rule of cause, the court has broad discretion in determining cause and is not limited to grounds specified in § 1112(b), such that the conversion may be supported on multiple bases. See Economy Cab, 44 B.R. at 724 n.1. A bankruptcy judge may find cause for equitable reasons beyond those exemplified in § 1112(b), and Judge Kressel not only found continuing losses and lack of rehabilitation, but that the state of affairs between the parties warranted conversion. Id.; Tr. of 2/6/02, at 33-34, ll. 20-7, 34-36, ll. 18-17. The court's consideration of factors such as the potential for conflicts, the complicated and costly nature of the Plan, and his view, based on review of the Plan, that it would not be confirmable, informed his decision to convert. Tr. of 2/6/02, at 33-34, ll. 20-7, 34-36, ll. 18-17. This was not an abuse of discretion.

**c. The Best Interests of the Creditors**

In addition to finding cause under any factor, the court must determine whether conversion or dismissal is in the best interests of the creditors. 11 U.S.C. § 1112(b); Han v. Linstrom, 2002 WL 31049846, at *4 (N.D. Ill. Sept. 12, 2002). The court does not need to consider whether or not proceeding under Chapter 11 would be better, but only whether conversion or dismissal is preferable. See id. (citing In re Woodbrook Assocs., 19 F.3d 312, 316

(7th Cir. 1994)). Appellants contend that the bankruptcy court failed to make any findings regarding this necessary determination. However, the proceedings reveal that after Judge Kressel found cause, he also considered whether conversion or dismissal would be best, as required. See Tr. of 2/6/02, at 37, ll. 8-15; Tr. of 3/13/02, at 33, ll. 5-20.

**C. Movant's Burden of Proof**

As another ground of attack, Appellants argue Judge Kressel improperly shifted the burden of proof from the movant, the UST, to the Appellants. The February 6, 2002 Transcript, however, specifically states the court's recognition of the movant's burden and its conclusion that the movant had established cause. See Tr. of 2/6/02, at 37, ll. 8-15. Once cause has been shown, the judge may shift the burden of proof to the debtor to demonstrate that Chapter 11 would be better than Chapter 7. Minnesota Alpha, 122 B.R. at 94. This is precisely what occurred in this case. Judge Kressel gave Appellants the opportunity to present him with an agreed-upon, confirmable plan and the debtor failed to meet this burden. Tr. 2/6/02, at 37-39, ll. 16-4. Accordingly, at the subsequent hearing, Judge Kressel found cause pursuant to his earlier determinations. Tr. of 3/13/02, at 32-33, ll. 19-20. The allocation of the burden was proper under the law. Minnesota Alpha, 122 B.R. at 94.

**D. The Court's Findings of Fact**

Appellants next assert that the court did not make sufficient findings of fact. Particularly, Appellants challenge Judge Kressel's basis for his conclusion that conversion was in the best interests of the creditors.

An order of conversion does not require extensive findings of fact. Findings merely need to be sufficient to allow a reviewing court to determine the basis of decision. In re Fossum, 764

F.2d 520, 521-22 (8th Cir. 1985); see also In re Sunflower Racing, Inc., 226 B.R. 665, 671 (D. Kan. 1998). Judge Kressel specifically found, based on the Debtors' statements and disclosures, his personal review of the Plan and conclusion that it was excessively complex and costly, and the Committee's refusal of the proposed plan, as the representative body for the unsecured creditors, that conversion was proper. See Tr. of 2/6/02, at 33-39; Tr. of 3/13/02, at 33, ll. 13-20.

After reading the Plan, Judge Kressel determined that it was overly complicated and unlikely to be confirmed. Tr. of 2/6/02, at 34, ll. 8-10, 35, ll. 6-8, 35-36, ll. 25-11. Considering the contents of the Plan, the fact that several of the parties had already threatened, and the Committee had actually filed a motion to commence litigation against one another, along with the $1.3 million in legal, accounting and consulting expenses that had already accumulated, Judge Kressel found cause. He inferred that given the complicated nature of the Plan, and the disputes between the parties, it might not be possible to effectuate a Chapter 11 plan at all and, even if it were possible, it would require much more negotiation and possibly even litigation. Id. at 33-38. From the amount of the fees already incurred, Judge Kressel considered that continuing on this course would be very expensive. Further, Judge Kressel concluded that conversion was in the best interests of the creditors, noting that the Committee favored conversion and that these creditors were in the best position to determine their own best interests. See Tr. of 3/13/02, at 33, ll. 14-18. These factual determinations are sufficient to support conversion under the law and were not clearly erroneous. See e.g., Allied Van Lines, Inc. v. Small Bus. Admin., 667 F.2d 751, 753 (8th Cir. 1982) ("It is well established that the trial court does not need to make specific findings on all facts but only must formulate findings on the ultimate facts necessary to reach a decision.").

**E. Movant's Evidence**

Appellants cite no authority for the proposition that the UST may not rely on evidence of the debtor's circumstances already in the record to meet its burden of proof. In fact, in Fort Knox, the bankruptcy court stated that the trustee was relying on the debtor's financial statements and proceeded to find continuing losses based on this evidence. Fort Knox, 2002 WL 1842452, at *1-2, 3, 7 (discussing debtor's profit and loss statements; concluding with dismissal). Here, the UST acknowledged its evidentiary basis for its argument and the court explicitly articulated that the UST had shown cause with this proof. Tr. of 2/6/02, at 29, ll. 15-24, 37, ll. 8-12. Despite these allegations of insufficient evidence, Appellants do not dispute the court's factual findings regarding losses and rehabilitation, but instead challenge Judge Kressel's recitation and application of the legal standards of § 1112(b)(1), which, as addressed above, were proper. That much of the support for Appellees' motion and the court's decision came from Appellants' and Debtors' own submissions, which they do not dispute, does not detract from the sufficiency of the movant's factual basis.

**F. Failure to Give Proper Weight to the Value of the NOLs**

Without supporting citation, Appellants aver that the court abused its discretion by giving insufficient weight to the value of the NOLs. This exercise of judgment was not an abuse of judicial discretion. Indeed, under the standards of this Circuit, it is not clear that Judge Kressel even needed to consider this evidence. See e.g., Fort Knox, 2002 WL 1842452, at *2-3 (reciting tests for cause under § 1112(b)(1)). The NOLs would not have altered HRM's present negative cash flow, nor would they have gotten the company up and running again. Thus, cause would still exist. Similarly, the best interest of the creditors test requires consideration of conversion

versus dismissal, not conversion versus benefits that might be realized under Chapter 11 or other alternatives. See Woodbrook, 19 F.3d at 316.

**G. Premature Conversion/Failure to Hear Evidence**

As another basis of appeal, it is asserted that the court erroneously denied Appellants the opportunity at the March 13, 2002 hearing to present evidence regarding the new proposed plan. Motions for conversion do not require full evidentiary hearings but only an adequate record on which to determine the relevant issues. Sunflower Racing, 226 B.R. at 671. Judge Kressel expressly informed Appellants what they needed to do to withstand conversion, i.e., present an agreed-upon plan. Tr. of 2/6/02, at 33. Having been unable to fulfill this condition, Appellants were not entitled to enter in evidence the attributes of their revised plan. See Sunflower Racing, 226 B.R. at 671; Minnesota Alpha, 122 B.R. at 94 (stating that burden of proof shifts to opponent once movant has shown cause).

## IV. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Appellants' Appeal [Docket No. 1] is **DENIED**, and

2. The March 13, 2002 Order of Bankruptcy Judge Robert J. Kressel [Docket No.1, Doc. 2; Bky 01-43354 Docket No. 296] is **AFFIRMED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Date: February 5, 2003