02-793 ADM

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

No. 03-1786

| | | |
|---|---|---|
| Loop Corp.; Leon Greenblatt; Nola, LLC; Repurchase Corp.; Leslie Jabine; Teletech Systems, Inc.; Chiplease, Inc.; Banco Panamericano, | * | |
| Creditors - Appellants, | * | Appeal from the United States District Court for the District of Minnesota. |
| v. | * | |
| United States Trustee; Committee of Unsecured Creditors, | * | |
| Movants Below - Appellees. | * | |

Submitted: February 13, 2004
Filed: August 16, 2004

Before MORRIS SHEPPARD ARNOLD, JOHN R. GIBSON, and RILEY, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

The district court affirmed the bankruptcy court's Order of Conversion of the debtors' Chapter 11 case to a case under Chapter 7. Loop Corporation, a creditor which also owns approximately 50% of the debtors' stock, and various of Loop's affiliates (collectively "Loop") appeal, arguing that the bankruptcy court improperly interpreted and applied 11 U.S.C. § 1112(b). We affirm.

SCANNED
SEP 17 2004
U.S. DISTRICT COURT MPLS

## FACTS

Debtor Health Risk Management, Inc. and three of its subsidiaries filed petitions under Chapter 11 of the Bankruptcy Code on August 7, 2001, which the bankruptcy court consolidated and ordered to be jointly administered. The debtors intended from very early in the case to liquidate their businesses rather than attempt to reorganize as viable entities.

In the months following the filing, the debtors successfully liquidated their two primary businesses as well as substantially all of their remaining assets. They used part of the funds from these sales to pay the claims of their secured creditors. As of December 5, 2001, when the debtors filed their initial plan of reorganization, their remaining assets included: 1) approximately $3.25 million in cash; 2) potential causes of action against Ernst & Young and various other directors and accountants of the debtors; and 3) net operating losses that purportedly could provide the estate with $10 million to $20 million in value.[1] The debtors, Loop, and the Official Committee of Unsecured Creditors ("Creditors' Committee") began to attempt to negotiate a consensual plan of reorganization, but they were unsuccessful.

On January 10, 2002, the Trustee moved for conversion of the cases from Chapter 11 to Chapter 7 pursuant to 11 U.S.C. § 1112(b). This motion was opposed by the debtors, Loop, and the Creditors Committee, who sought more time for negotiations. At a February 6, 2002, hearing on the motion, the debtors' counsel explained that the debtors preferred to stay in Chapter 11 and use part of the remaining cash to fund litigation against the accountants and directors rather than distribute the cash to the unsecured creditors. The debtors also believed that the

---

[1]The purported value of the net operating losses came from the debtors' plan to use the losses to shelter Loop's earnings, with the benefits trickling down to the other unsecured creditors through the issuance of Loop stock.

value of the net operating losses could be realized, if at all, only in Chapter 11. Loop and the Creditors' Committee also preferred to remain in Chapter 11 because they thought Chapter 11 had the potential to provide a greater return for the unsecured creditors.

The Trustee, however, focused on the accumulating expenses associated with administering the estate in Chapter 11–over $1.3 million during the period from September 2001 to January 2002 alone–and the parties' continuing failure to reach a confirmable plan of liquidation. The Trustee believed the expenses would continue to reduce the assets available to the creditors, who would otherwise be entitled to prompt distribution of the remaining cash if the case were conducted under Chapter 7 instead of Chapter 11. See In re Bell, 225 F.3d 203, 221-22 (2d Cir. 2000) (primary purpose of Chapter 7 trustee is "to collect, liquidate and distribute estate property thereby closing the estate as expeditiously as is compatible with the best interests of the parties") (internal punctuation omitted).

The bankruptcy court concluded at the February 6 hearing that the Trustee had shown cause for conversion. However, the court continued the conversion hearing until March 13, 2002, to give the debtors and creditors one last chance to negotiate a confirmable plan. The parties returned to court on March 13 without having agreed on a satisfactory plan. By that time, even the Creditors' Committee believed conversion to Chapter 7 was appropriate and had, in fact, filed its own motion for conversion. Only Loop and the debtors opposed.

Relying on its earlier finding of cause and on the Creditors' Committee's new support for conversion, the bankruptcy court granted the motion to convert. Loop appealed the bankruptcy court's conversion order to the district court, which affirmed. Loop now appeals the district court's affirmance.

Although Loop divides its appeal into six separate arguments, we understand it to raise two real issues: first, that the bankruptcy court erred by interpreting § 1112(b) in a manner that Loop believes makes it impossible for liquidating debtors to remain in Chapter 11; and second, that the bankruptcy court abused its discretion by improperly applying § 1112(b) in this case.

I.

The Trustee and Creditors' Committee moved for conversion of the debtors' liquidating Chapter 11 cases to Chapter 7 despite the assertion by Loop and the debtors that a Chapter 11 liquidation would provide greater recovery for the creditors. The bankruptcy court granted the motion to convert because it believed "cause" existed under 11 U.S.C. § 1112(b), which states in part:

> [O]n request of a party in interest or the United States trustee or bankruptcy administrator, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including–
>
> (1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;
>
> (2) inability to effectuate a plan. . . .

The bankruptcy court concluded that cause existed under § 1112(b)(1) because, first, the ongoing expenses associated with administering the estate and attempting to negotiate a confirmable plan constituted "continuing loss to or diminution of the estate" and, second, the debtors were liquidating and therefore had no likelihood of

rehabilitation.[2] The court also provided several reasons why it considered Chapter 7 to be better for creditors than Chapter 11, including the court's uncertainty about the parties' ability to negotiate a confirmable plan and concern about the costs associated with staying in Chapter 11.

We sit as a second court of review in bankruptcy matters and apply the same standards of review as the district court. See In re Clark, 223 F.3d 859, 862 (8th Cir. 2000). We review the bankruptcy court's factual findings for clear error and its conclusions of law *de novo*. See In re Cedar Shore Resort, Inc., 235 F.3d 375, 379 (8th Cir. 2000). "The bankruptcy court has broad discretion in deciding whether to dismiss or convert a Chapter 11 case." In re Lumber Exch. Bldg. Ltd. P'ship, 968 F.2d 647, 648 (8th Cir. 1992).

---

[2] The bankruptcy court also apparently believed that cause existed under subsection (2) of § 1112(b), citing its skepticism about whether any plan would be confirmable and the Creditors' Committee's rejection of the debtors' final proposed plan. See also In re Fossum, 764 F.2d 520, 521-22 (8th Cir. 1985) ("A finding that the [debtors] were unable to effectuate any plan which would be confirmable is a proper basis for dismissal of the [debtors'] chapter 11 case."). However, because the parties disputed whether the bankruptcy court explicitly found cause under § 1112(b)(2), and because a finding of cause under § 1112(b)(1) is a sufficient basis for affirmance, the district court did not examine this potential second ground for conversion. While we agree that the satisfaction of one subsection of § 1112(b) is sufficient to show cause, we see no reason to ignore the bankruptcy court's skepticism about the debtors' ability to confirm a plan. The bankruptcy court is not required, after all, to rigidly apply the enumerated grounds for cause or to analyze one subsection of § 1112(b) in a way that excludes consideration of all other factors favoring conversion. See, e.g., In re Gonic Realty Trust, 909 F.2d 624, 626 (1st Cir. 1990) (in determining cause "the court may consider other factors as they arise and use its powers to reach appropriate results in individual cases"). Thus, we will consider the bankruptcy court's comments about the debtors' apparent inability to confirm a plan as they are relevant to the court's determination that cause existed and that conversion would serve the best interest of the creditors.

Loop argues that, taken together, the bankruptcy court's interpretations of "continuing loss to or diminution of the estate" and "rehabilitation" mean that cause for conversion to Chapter 7 will automatically exist whenever a debtor seeks to liquidate under Chapter 11. First, Loop asserts, a liquidating debtor will inevitably have a negative cash flow, which the bankruptcy court determined was sufficient to find "continuing loss to or diminution of the estate." Second, a liquidating debtor will by definition have no likelihood of "rehabilitation" because the bankruptcy court understood that term to refer to the restoration of the debtor's business operations, not the liquidation of the debtor's assets. Thus, unless the creditors or Trustee decline to file a motion to convert, a debtor will never be able to liquidate in Chapter 11.

We are unpersuaded by Loop's challenge to the bankruptcy court's interpretation of "continuing loss to or diminution of the estate." Loop concedes that the debtors, as liquidating entities that had ceased their business operations but continued to incur administrative expenses, had a negative cash flow. Under the interpretation of § 1112(b)(1) consistently used in bankruptcy courts, this negative cash flow situation alone is sufficient to establish "continuing loss to or diminution of the estate." <u>See, e.g.,</u> <u>In re Schriock Constr., Inc.</u>, 167 B.R. 569, 575 (Bankr. D. N.D. 1994) (continuing loss to or diminution of the estate can be established by showing that debtor incurred continuing losses or maintained negative cash flow after entry of the order for relief); <u>Matter of 3868-70 White Plains Road, Inc.</u>, 28 B.R. 515, 518 (Bankr. S.D. N.Y. 1983) (continuing loss or diminution illustrated by debtor's continual negative cash flow); <u>see also</u> 7 <u>Collier on Bankruptcy</u> ¶ 1112.04[5][a][i] (Alan N. Resnick & Henry J. Sommer, eds. 15th ed. 2004) ("If the debtor is operating with a sustained negative cash flow after entry of the order for relief, this fact is sufficient to support a finding that the debtor is experiencing a 'continuing loss to . . . the estate.'").

We are convinced that this interpretation is correct, notwithstanding Loop's concern that a liquidating debtor will "inevitably" have a negative cash flow. The

purpose of § 1112(b)(1) is to "preserve estate assets by preventing the debtor in possession from gambling on the enterprise at the creditors' expense when there is no hope of rehabilitation." In re Lizeric Realty Corp., 188 B.R. 499, 503 (Bankr. S.D. N.Y. 1995). In the context of a debtor who has ceased business operations and liquidated virtually all of its assets, any negative cash flow–including that resulting only from administrative expenses–effectively comes straight from the pockets of the creditors. This is enough to satisfy the first element of § 1112(b)(1), see In re Citi-Toledo Partners, 170 B.R. 602, 606 (Bankr. N.D. Ohio 1994) (first requirement of § 1112(b)(1) satisfied because administrative expenses eroded the position of the estate's creditors and diminished the value of the estate). Thus, the bankruptcy court did not err in finding continuing loss to or diminution of the estate.

Likewise, the bankruptcy court did not err in concluding that a liquidating debtor who had no intention of restoring its business had no reasonable likelihood of rehabilitation. Courts have consistently understood "rehabilitation" to refer to the debtor's ability to restore the viability of its business. See, e.g., In re Gonic Realty Trust, 909 F.2d at 627 ("[W]ith no business left to reorganize, Chapter 11proceedings were not serving the purpose of rehabilitating the debtor's business."); In re The Ledges Apartments, 58 B.R. 84, 87 (Bankr. D. Vt. 1986) ("Reorganization encompasses rehabilitation and may contemplate liquidation. Rehabilitation, on the other hand, may not include liquidation."); In re Wright Air Lines, Inc., 51 B.R. 96, 100 (Bankr. N.D. Ohio 1985) ("Rehabilitation as used in 11 U.S.C. Section 1112(b)(1) means to put back in good condition; re-establish on a firm, sound basis.") (internal punctuation omitted). Because the debtors here intended to liquidate their assets rather than restore their business operations, they had no reasonable likelihood of rehabilitation.

We are sensitive to Loop's concern that this interpretation of § 1112(b)(1) amounts to a *per se* rule allowing a creditor or Trustee to force conversion to Chapter 7 whenever a debtor seeks to liquidate under Chapter 11. Indeed, it is difficult to

imagine a liquidating debtor who will not meet the criteria for cause described in § 1112(b)(1). Nonetheless, this concern may be alleviated if the bankruptcy court's discretion under § 1112(b) is understood to permit the court to deny both conversion and dismissal despite a showing of cause. Such an understanding is supported by the permissive language of the statute, which states that the court "may" convert or "may" dismiss, and is consistent with our recognition of the bankruptcy court's "broad discretion" under § 1112(b). See In re Lumber Exch. Bldg. Ltd. P'ship, 968 F.2d 647, 648 (8th Cir. 1992). Allowing the bankruptcy court in an appropriate case to deny dismissal or conversion despite a showing of cause also would give full effect to the statute's admonition to consider the "best interest of creditors and the estate," see In re Gonic Realty Trust, 909 F.2d 624, 626-27 (1st Cir. 1990) (court has broad discretion under § 1112(b) and may "use its powers to reach appropriate results in individual cases" provided that the ultimate decision is in the best interest of creditors), and would ensure that § 1112(b) is interpreted consistently with the recognition of most courts that liquidation is permitted under Chapter 11. See, e.g., In re Jartran, Inc., 886 F.2d 859, 868 (7th Cir. 1989) (liquidating plans permissible under Chapter 11); Matter of Sandy Ridge Dev. Corp., 881 F.2d 1346, 1352 (5th Cir. 1989) ("[A]lthough Chapter 11 is titled 'Reorganization,' a plan may result in the liquidation of the debtor.").[3]

---

[3]We recognize some disagreement among lower courts on this subject. Compare In re Travelstead, 227 B.R. 638, 651 & n.14 (D. Md. 1998) (liquidating plans are authorized under Chapter 11); In re Ionosphere Clubs, Inc., 184 B.R. 648, 654 (S.D. N.Y. 1995) (same), with In re Lyons Transp. Lines, Inc., 123 B.R. 526, 534 (Bankr. W.D. Pa. 1991) ("We conclude that there is no authority in the Bankruptcy Code allowing a debtor to file a petition for relief under Chapter 11 for the purpose of self-liquidation."); Matter of Natrl Plants & Lands Mgmt. Co., Ltd., 68 B.R. 394, 395-96 (Bankr. S.D. N.Y. 1986) ("Liquidation is not the proper function of reorganization proceedings, but the function of Chapter 7 proceedings."). In any event, we have not located any appellate court cases prohibiting liquidation in Chapter 11 proceedings, and the clear weight of authority permits such liquidation.

In any event, we need not definitively hold that § 1112(b) allows a bankruptcy court to deny conversion or dismissal despite a showing of cause because the bankruptcy court in this case *granted* the motion to convert, which is clearly within the court's discretion once cause has been established. The only question is whether the court abused that discretion.

II.

In considering whether the bankruptcy court abused its discretion, we will assume, as Loop urges, that in addition to finding cause under § 1112(b)(1) the court was under some obligation to consider Loop's evidence purporting to show that the best interest of the creditors and estate would be served by remaining in Chapter 11. Cf. In re Justus Hospitality Props., Ltd., 86 B.R. 261, 265 (Bankr. M.D. Fla. 1988) ("The existence of one or more of the grounds set forth [in § 1112(b)] does not compel conversion or dismissal. The bankruptcy court, in its sound discretion, must make the ultimate decision."). Even under such an assumption, the bankruptcy court did not abuse its discretion.

First, there is no merit to Loop's contention that the bankruptcy court erroneously placed the burden of proof on the parties opposing the motion to convert. See Matter of Woodbrook Assocs., 19 F.3d 312, 317 (7th Cir. 1994) (moving party bears burden of proving that cause exists under § 1112(b)). Loop bases this argument on comments by the bankruptcy court and Trustee that the debtors had failed to demonstrate how costs would be lower or recovery for creditors higher under Chapter 11 than Chapter 7, which Loop interpreted as indicating a shift of the burden of proof to the parties opposing the conversion motion. When looked at in the proper context, it is clear that no such shifting occurred and that the bankruptcy court properly held the Trustee to its burden. The court explained why it felt each element of § 1112(b)(1) had been satisfied and specifically concluded, "the U.S. Trustee has shown cause." The court cited the facts it relied upon to support its conclusion,

including facts from the debtor's own filings showing administrative expenses and the debtor's undisputed intent to liquidate rather than attempt rehabilitation. The court also gave several reasons why it considered Chapter 7 to be preferable to Chapter 11, including: 1) the court's uncertainty about whether the debtors would ever be able to propose a confirmable plan under Chapter 11; 2) the expenses associated with even attempting to negotiate such a plan; 3) the running of administrative expenses; and 4) the expenses of a disbursing agent and other professionals whose services would be necessary should the parties ever agree on a confirmable plan. Viewed in this light, the comments about the relative costs and benefits of Chapter 7 and Chapter 11 were, at most, a reflection of the court's belief that the parties opposing conversion had failed to produce adequate rebuttal evidence. See Matter of Woodbrook Assocs., 19 F.3d at 317 (debtor has an obligation to produce evidence in opposition to a well-supported motion under § 1112(b)); In re Lizeric Realty Corp., 188 B.R. 499, 503 (Bankr. S.D. N.Y. 1995) (once cause is shown, "it is incumbent upon debtor to show that relief under § 1112(b) is not warranted").

Second, we are unpersuaded by Loop's argument that the Trustee did not introduce sufficient evidence to meet its burden of showing cause under § 1112(b). The Trustee proved the existence of cause by referring to the record, which contained undisputed evidence that the debtors had a negative cash flow and no intention of rehabilitating their business. See, e.g., In re W. Pac. Airlines, Inc., 218 B.R. 590, 595 (Bankr. D. Colo. 1998) ("[I]t cannot be denied that the Committee has established 'cause' under Section 1112(b) by showing that not only does the Debtor lack the ability to reorganize, but that it also has had a negative cash flow since the filing of this case."). The record also showed the debtors' failure to achieve a confirmable plan with the creditors, thus indicating that the negative cash flow and non-payment of unsecured creditors would continue indefinitely if the case remained in Chapter 11. Conversion to Chapter 7, on the other hand, would eliminate the expenses associated with confirmation of a plan and likely would ensure prompt distribution of the remaining cash to the unsecured creditors. See In re Bell, 225 F.3d 203, 221-22 (2d

Cir. 2000) (primary purpose of Chapter 7 trustee is "to collect, liquidate and distribute estate property thereby closing the estate as expeditiously as is compatible with the best interests of the parties") (internal punctuation omitted). Finally, the record showed that the debtors' desired Chapter 11 plan would result in the expenditure of even more cash in the pursuit of various causes of action. Because such causes of action could be pursued by a trustee in Chapter 7, see, e.g., In re Ozark Rest. Equip. Co., Inc., 816 F.2d 1222, 1225 (8th Cir. 1987) (Chapter 7 trustee has the responsibility to assert any causes of action necessary for collection or preservation of the estate because "estate property" includes causes of action), no advantage would be gained by remaining in Chapter 11; instead, time and resources would be wasted during a confirmation process that may never even be successful.

Loop nonetheless claims that the debtors presented "unrefuted" evidence in opposition to the conversion motion, including, in particular, a self-serving affidavit purporting to demonstrate the value of the net operating losses in Chapter 11. Although there was no evidence directly refuting the net operating loss issue, the bankruptcy court was not required to blindly accept the debtors' allegations as fact. Instead, the court should, and did, assess the evidence critically and assign it only the weight it deserved. We see no abuse of discretion in the court's ultimate conclusion that any speculative value which might be derived from the net operating losses in Chapter 11 was outweighed by the continuing erosion of the estate, the debtors' failure to achieve a confirmable Chapter 11 plan, and the preference of the Creditors' Committee for conversion. See In re Tiana Queen Motel, Inc., 749 F.2d 146, 151-52 (2d Cir. 1984) (affirming conversion order where debtor's prospects for reorganization were based on nothing more than the "boundless confidence" of one of the debtor's principals); Quarles v. U.S. Trustee, 194 B.R. 94, 97 (W.D. Va. 1996) (affirming conversion order where debtor's hope to improve his financial problems through litigation was "pure speculation").

Third, we conclude the bankruptcy court made sufficient findings of fact to support its conversion order. The court gave an extensive oral explanation for its grant of the conversion motion, stating, *inter alia*: "as we sit here the administrative expenses are running. That diminishes the estate . . . . No rehabilitation is proposed here . . . . rehabilitation does not encompass what the debtor is doing here so cause has been shown . . . . Maybe I'm missing something but I'm not missing the expense that is going to be involved in consummating this plan . . . . The estates are continuing to incur losses and it's being diminished and there is no opportunity or [chance] for rehabilitation." The court also listed the reasons it considered Chapter 7 to be preferable to Chapter 11. These findings are adequate. See In re Fossum, 764 F.2d 520, 521-22 (8th Cir. 1985) (bankruptcy court's factual findings sufficient despite consisting of a single sentence: "the debtors must realize that reorganization is simply not possible and [that] liquidation is the only feasible alternative"); Matter of Koerner, 800 F.2d 1358, 1368 (5th Cir. 1986) ("The bankruptcy judge is not required to give exhaustive reasons for his decision [to convert].").

Finally, the conversion order was not premature and did not impermissibly deprive the creditors not represented on the Creditors' Committee of the opportunity to consider the debtors' final proposed plan of reorganization. See Woodbrook Assocs., 19 F.3d at 317 ("Creditors need not wait until a debtor proposes a plan or until the debtor's exclusive right to file a plan has expired . . . . The very purpose of § 1112(b) is to cut short this plan and confirmation process where it is pointless."). In fact, the role of the creditors' committee would be obliterated if, as Loop seems to suggest, the bankruptcy court is required to solicit the views of the entire body of creditors each time a debtor proposes a new plan. See Matter of Advisory Comm. of Major Funding Corp., 109 F.3d 219, 224 (5th Cir. 1997) ("Creditor Committees have the responsibility to protect the interest of the creditors; in essence, the function of a creditors' committee is to act as a watchdog on behalf of the larger body of creditors which it represents.") (internal punctuation omitted). We are satisfied that the Creditors' Committee's consideration and rejection of the debtors' plan, combined

with the bankruptcy court's findings under § 1112(b)(1), is sufficient to justify the timing of the bankruptcy court's order.

III.

We conclude that the district court properly interpreted § 1112(b) and did not abuse its discretion in ordering conversion of the debtors' case to Chapter 7. We affirm.

---



A TRUE COPY OF THE ORIGINAL
MICHAEL E. GANS, CLERK
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
BY: Michael E. Gans

UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
THOMAS F. EAGLETON COURT HOUSE
ROOM 24.329
111 S. 10TH STREET
ST. LOUIS, MISSOURI 63102

MICHAEL E. GANS
Clerk of Court

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

September 10, 2004

RECEIVED
BY U.S. MAIL
2004 SEP 17 AM 9:10
CLERK, U.S. DIST COURT
MINNEAPOLIS, MN

Mr. Richard Sletten
Clerk
U.S. DISTRICT COURT, MINNESOTA
202 U.S. Courthouse
300 S. Fourth Street
Minneapolis, MN 55415

Re: 03-1786 Loop Corp. vs. U.S. Trustee

Dear Clerk:

The mandate of this Court is being sent to the clerk of the district court, together with a receipt. The clerk of the district court is requested to sign, date, and return the receipt to this office.

Any district court records in this court's possession will be returned shortly.

(5175-010199)

Sincerely,

Michael E. Gans

Michael E. Gans
Clerk of Court

srd

Enclosure

(LETTER FOR INFORMATIONAL PURPOSES ONLY)

---

cc: Honorable Ann D. Montgomery
Michael F. McGrath
Robert M. Fishman
Brian L. Shaw
Allen J. Guon
Jane Sarah Welch
Eric John Magnuson
Daniel J. McGarry

Michael R. Fadlovich
Nancy A. Peterman
James A. Rubenstein

District Court/Agency Case Number(s): CIV 02-793 ADM